UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

JUDITH D. S.,                                              Case No. 6:20-CV-00843-AC

                  Plaintiff,                              OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____

ACOSTA, Magistrate Judge:

Plaintiff Judith D. S.[1] seeks judicial review of the final decision of the Commissioner of

Social Security denying her application for a period of disability and disability insurance benefits

("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security

Act ("Act"), 42 U.S.C. §§ 401-403, and 1381-1383f.  This court has jurisdiction pursuant to 42

U.S.C. § 405(g) and 1383(c)(3).  All parties have consented to allow a Magistrate Judge enter

_____

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the
last name of the non-governmental and related lay witness party in this case.

Page 1 – OPINION AND ORDER

final orders and judgment in this case in accordance with 28 U.S.C. § 636(c).   For the following reasons, the Commissioner's decision is reversed and remanded for further proceedings.

*Procedural Background*

On August 19, 2015, Plaintiff filed a Title II application for a period of disability and DIB. Tr. Soc. Sec. Admin. R. ("Tr.") at 15, ECF No. 17.   Plaintiff also filed a Title XVI application for SSI benefits on April 26, 2016.   *Id.*   According to both applications, Plaintiff's alleged disability due to fibromyalgia, depression, chronic obstructive pulmonary disease ("COPD"), and tachycardia began on July 5, 2014, later amended through her representative to July 25, 2015.   Tr. 15, 96, 246, 248, 269.   Plaintiff's claims were denied initially and upon reconsideration.   Tr. 113-14, 124.   On February 21, 2019, Plaintiff, along with a representative, attended a hearing before administrative law judge ("ALJ") Lori L. Freund.   Tr. 35.   A vocational expert ("VE"), Jeffrey F. Tittelfitz, and medical expert, Lynn Jahnke, M.D., ("Dr. Jahnke"), also appeared and testified. Tr. 39, 74.   On May 22, 2019, the ALJ issued an unfavorable decision for Plaintiff's claims of DIB and SSI benefits.   Tr. 12.   The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.   Tr. 1.

Plaintiff was born in 1960, was fifty-four on the amended onset date of July 25, 2015, was fifty-nine on her date last insured, and fifty-eight on the date of the ALJ's decision.   Tr. 12, 37, 246.   Plaintiff has completed education through the tenth grade and has past relevant work as shoe pricer.   Tr. 281-82.

*The ALJ's Decision*

The ALJ determined that Plaintiff meets the insured status requirements through December 31, 2019, and at step one, found that she has not engaged in substantial gainful activity from July

Page 2 – OPINION AND ORDER

25, 2015, the amended alleged onset date, through her date last insured, December 31, 2019.  Tr.

18.  At step two, the ALJ determined that Plaintiff had the following severe impairments: mild

degenerative disc disease of the spine, obesity, and COPD.  *Id.*  The ALJ also determined

Plaintiff has the following non-severe impairments: non-migraine chronic headaches, tachycardia,

and major depressive disorder.  Tr. 18-19.

Regarding Plaintiff's alleged diagnosis of fibromyalgia, the ALJ determined Plaintiff failed

to establish fibromyalgia as a medically determinable impairment.  Tr. 19.  Although the ALJ

acknowledged Plaintiff's history of positive tender point testing necessary for a diagnosis of

fibromyalgia, the ALJ reasoned the other necessary showing of evidence—excluding other

disorders that could cause the symptoms or signs—was not met nor was documentation of

consistent symptomology present.  Tr. 19.  Alternatively, the ALJ reasoned that even if

fibromyalgia been determined to be a medically determinable impairment, the impairment would

not have affected Plaintiff's residual functional capacity ("RFC") based on Dr. Jahnke's opinion

and review of the objective clinical findings and Plaintiff's subjective complaints.  Tr. 19.

At step three, the ALJ determined that Plaintiff's severe impairments did not meet or equal

any listed impairment.  Tr. 19.  Reviewing all the evidence in the record, the ALJ determined

Plaintiff has the residual functional capacity ("RFC") to perform a reduced range of light work

with the following limitations: she is limited to lifting up to twenty pounds occasionally; lifting

and carrying up to ten pounds frequently; standing and walking for a total of up to six hours in an

eight-hour workday; sitting for at least six hours in an eight-hour workday with normal breaks;

would need to avoid climbing ladders, ropes, and scaffolds; can occasionally climb ramps and

stairs; should avoid moderate exposure to airborne irritants such as fumes, odors, and gases.  Tr.

20.

Page 3 – OPINION AND ORDER

At step four, the ALJ determined, based on the VE's testimony, Plaintiff is capable of performing past relevant work as a boot and shoe sorter.   Tr. 25.   Accordingly, the ALJ concluded that Plaintiff is not disabled under the Act from July 5, 2014, through the date of the ALJ's decision, May 22, 2019.   Tr. 25.

*Issues on Review*

On appeal to this court, Plaintiff contends the ALJ made the following errors: (1) erred in her step two analysis by determining Plaintiff's complaints of fibromyalgia and chronic headaches were non-severe impairments; (2) failed to meet the clear and convincing standard in determining Plaintiff was less than fully credible; (3) failed to correctly assess lay witness testimony; and (4) failed to incorporate all medical findings into Plaintiff's RFC.   The Commissioner contends the ALJ's decision is supported by substantial evidence and is free of legal error.

*Standard of Review*

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017).   "Substantial evidence is more than a 'mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotations omitted); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014).   To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.   *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1009.   "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner."

*Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

*Discussion*

I.    Subjective Symptom Testimony

Plaintiff argues that the ALJ erred by improperly rejecting Plaintiff's subjective symptom testimony when the ALJ improperly focused on singular records as opposed to the record as a whole and relied on inconsistencies between Plaintiff's statements and the record and inconsistencies between Plaintiff's statements and her ADLs.  Pl. Opening Br. ("Pl. Br.") at 28-32, ECF No. 18.  Defendant contends the ALJ's rejection of Plaintiff's subjective complaints is supported by substantial evidence in the record because Plaintiff's allegations were inconsistent with the medical record, inconsistent with her ADLs, and inconsistent with Plaintiff's lack of treatment.  Def. Br. at 5-14, ECF No. 19.

A.    *Legal Standard*

An ALJ must make two findings before he or she can find the plaintiff's subjective symptom testimony not credible.  *Treichler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* (citation and internal quotations omitted).  Second, absent a finding of malingering, the ALJ must provide "specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms."  *Id.* (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)).

An ALJ errs and does not satisfy the threshold for "specific, clear and convincing reasons" where the ALJ does not specifically identify the testimony determined to be not credible and link

Page 5 – OPINION AND ORDER

it to particular parts of the record. *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015); *see also Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (finding the ALJ erred because the ALJ "did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony") (emphasis in original); *but cf. Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (stating that the ALJ did not err when the ALJ pointed to reports by the treating and examining physicians and connected the evidence to claimant's testimony to support an adverse credibility determination). Indeed, the Ninth Circuit made clear that a summary of the medical record in support of the ALJ's RFC, alone, is not enough to discredit a plaintiff's subjective symptom testimony. *Brown-Hunter*, 806 F.3d at 489 (stating "that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination").

Moreover, an ALJ may reject a plaintiff's subjective symptom testimony by finding that the claimant's activities of daily living ("ADLs"): "(1) are inconsistent with the functional limitations alleged, or (2) meet the threshold for transferable work skills." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, where an ALJ predicates an adverse credibility determination on a claimant's ADLs, the ALJ "must make specific findings relating to the daily activities and their transferability." *Id.* (stating "daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting") (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)) (internal quotations omitted).

Furthermore, an ALJ does not satisfy the clear and convincing standard required to reject a claimant's subjective symptom testimony by merely citing a lack of objective medical evidence or inconsistency with the medical record. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

Page 6 – OPINION AND ORDER

(citation omitted); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1153-54 (9th Cir. 2017) (stating that discrediting symptom testimony based on inconsistency with the RFC is improper).

    B.    *ALJ's Subjective Symptom Evaluation*

        i.    *Plaintiff's Subjective Symptom Testimony*

The ALJ discusses and concludes that Plaintiff's subjective symptom testimony is "inconsistent with the objective findings." Tr. 21, 23-25.[2] The ALJ describes that Plaintiff alleges disability "due to her fibromyalgia, depression, COPD, and tachycardia," and those conditions "affect her ability to lift, squat bend, stand, reach, walk, sit kneel, climb stairs, and use her hands." Tr. 21.    Additionally, the headaches reportedly affect her "concentration, understanding, and ability to complete tasks." *Id.*

Plaintiff's reported limitations and subjective symptom testimony are lifting "15 to 20 pounds and cannot lift over her head;" taking "short walks lasting 10 to 15 minutes;" experiencing "spasms on a generally constant basis in her back that travel down her left leg;" experiencing "weakness in her left arm;" being "able to complete household activities such as dusting, sweeping and mopping, but she has to take frequent breaks where she sits down with her feet elevated." Tr. 21.

Additionally, Plaintiff testified at the hearing with the ALJ that because of the spasms in her back, she would need to rest for fifteen to twenty minutes after five to ten minutes of sweeping. Tr. 60-61.    Plaintiff testified spasms were a constant pain spreading from her neck down her entire back.    Tr. 61.    Plaintiff further testified she was limited to walking for approximately 20 minutes.

---

[2] Because the court finds the error Plaintiff asserts at step two is harmless error, discussed in section IV, the symptoms discussed below relate to Plaintiff's headaches and diffuse back pain, as Plaintiff asserts the back pain is related to fibromyalgia.

Page 7 – OPINION AND ORDER

Tr. 64-65.   Although the pain would wax and wane, Plaintiff testified that her diffuse back pain would affect her ability to stand in one place, being able to stand only 10 to 15 minutes at a time during previous two years.   Tr. 64-65, 67.

On examination by her representative, Plaintiff testified that although she could hypothetically carry a gallon of milk in each hand ten to fifteen feet, the activity would cause her strain in her neck and back that would require Plaintiff to take a thirty to forty-five-minute break following such activity.   Tr. 69.   Notably, Plaintiff testified that although she is able to garden on a daily basis, she could garden only in increments of fifteen minutes with rest breaks of thirty to forty-five minutes for a cumulative total of "two or three hours."   Tr. 70.

### ii.    ALJ's Reasoning for Rejecting Plaintiff's Subjective Symptom Testimony

In evaluating Plaintiff's subjective symptom testimony, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."   Tr. 21. The ALJ does reference multiple times that Plaintiff's symptom testimony is not entirely consistent with the medical record and other evidence.   Tr. 23-25.

Regarding Plaintiff's headaches, the ALJ stated "there is no evidence of regular use of a preventative medication or regular treatment with a neurologist."   Tr. 24.   Moreover, in discussing Plaintiff's back spasms, which Plaintiff asserts are due to fibromyalgia, the ALJ cited a lack of corroborating objective medical findings and relied on the testifying non-examining doctor, Dr. Jhanke, to discount Plaintiff's subjective symptom testimony.   Tr. 22; Pl. Br. at 30.

Stating that Plaintiff's "complaints are inconsistent with her relatively unremarkable physical examinations," the ALJ cited to single visit on June 20, 2016, and noted that the physical

Page 8  – OPINION AND ORDER

examination was unremarkable.  Tr. 23, 446-47.  In summarizing a physical therapist evaluation from July 20, 2016, the ALJ noted that Plaintiff reported pain being exacerbated by picking strawberries and "difficulties with pulling weeds and yard work."  Tr. 22, 452.  The ALJ went on to note that Plaintiff declined self-pay options for physical therapy following notice that insurance would not cover the physical therapy sessions.  Tr. 22.  Additionally, the ALJ stated that the "claimant has received relatively little treatment for her allegedly incapacitating physical symptoms."  Tr. 24.  The ALJ continued with summarizing medical diagnostic testing related to Plaintiff's COPD.  Tr. 22-23.

Additionally, the ALJ finds that Plaintiff's "allegations regarding her medical conditions are inconsistent with her activities of daily living."  Tr. 24.  The ALJ lists out Plaintiff's ADLs as: preparing breakfast, washing laundry, sweeping, taking her daughter to work, preparing dinner, maintaining her own personal care, mopping, shopping, playing computer games, watching television, spending time her grandchildren, visiting her sister, and crocheting.  Tr. 24.  With no further explanation or analysis, the ALJ concludes that the "above activities indicate that she retains greater functioning than described." *Id.*

C.    *Analysis of ALJ's Subjective Symptom Testimony*

Here, the ALJ erred in rejecting Plaintiff's subjective symptom testimony in three respects: (1) by failing to identify which particular statements by Plaintiff were not credible and what specific medical evidence undermined Plaintiff's statements; (2) by not sufficiently explaining how Plaintiff's ADLs are either inconsistent with her symptom testimony or how her ADLs are

transferable to the workplace; and (3) by not providing further explanation when relying on lack of objective or minimal objective medical findings.[3]

    *i.  The ALJ failed to link any symptom testimony to evidence in the record*

  The ALJ did conclude that Plaintiff's complaints or statements were inconsistent with the record; however, the ALJ did not link any statements to any undermining medical evidence.   In referencing Plaintiff's statements, the ALJ does not identify specific statements or how any of Plaintiff's particular statements are undermined by the medical record.   Although the ALJ does state that the Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent with the objective findings" and "inconsistent with the minimal findings in imaging reports and pulmonary evaluations," the ALJ does not point to Plaintiff's specific statements that are undermined by the "relatively unremarkable physical examinations" and summarizes the clinical findings that presumably undermine Plaintiff's symptom testimony. Tr. 23.   For example, when the ALJ states Plaintiff's "complaints are inconsistent with her relatively unremarkable physical examinations," the ALJ points to a single physical examination dated June 20, 2016, indicating Plaintiff exhibited a normal gait, a negative straight leg raise test, and normal neurological findings.   Tr. 23, 446-47.   Yet, a follow-up report dated June 29, 2016, indicates Plaintiff's physical examination documented "mild bilateral tenderness to palpation" in the lumbar sacral region, which is consistent with Plaintiff's subjective symptom testimony.   Tr. 450-51.

---

[3] Because the ALJ mentions Plaintiff's headaches only once in connection with any medical reporting, which suggested that the ALJ found the lack of reporting or treatment undercuts Plaintiff's symptom testimony regarding headaches, analysis of the ALJ's reasoning regarding the headaches is discussed in part C (iii).

Indeed, this inconsistency, standing alone, does not wholly undermine or support Plaintiff's subjective symptom testimony, but this balancing of conflicting evidence—coupled with what symptom testimony the evidence would serve to support or undermine—is what an ALJ must do to discount subjective symptom testimony and assure a reviewing court that the testimony was not arbitrarily disregarded. *Compare Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (stating that determinations of credibility "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain") (citation and internal quotations omitted); *with Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (stating the "ALJ must specifically identify the testimony she or finds not to be credible and must explain what evidence undermines the testimony") (citation omitted); *and Dickins v. Colvin*, No. 15-cv-3711-HRL, 2016 WL 5390298, at *3 (N.D. Cal. Sept. 27, 2016) (finding ALJ did not err in rejecting claimant symptom testimony when ALJ pointed to testimony regarding pain radiating into claimant's legs directly contradicted statements to physician that pain did not radiate which was sufficient grounds to reject claimant's testimony).

Here, the ALJ did not discuss, at any length, Plaintiff's testimony that the severity of her pain caused her to be able to garden in only fifteen-minute increments with thirty-to-forty-five-minute breaks over a total of approximately three hours. Tr. 68-70. This testimony stands in stark contrast to the ALJ's RFC determination. Though reviewing courts will not assign error to an ALJ for "explaining its decision with less than ideal clarity, we still demand that the agency set forth the reasoning behind its decisions" to allow meaningful review. *Brown-Hunter*, 806 F.3d at 492 (citation and internal quotations omitted); *see also Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (stating that reviewing courts "cannot affirm the decision of an

agency on a ground that the agency did not invoke making its decision") (internal quotation and citations omitted) .

That the ALJ did not mention this particular testimony or identify what records evinced some inconsistency in Plaintiff's testimony underscores the rationale for the demanding clear and convincing reasons from the ALJ for rejecting Plaintiff's subjective symptom testimony.   That is, this cursory rationale does not ensure a reviewing court that Plaintiff's testimony was properly factored into the RFC or why it was rejected.   Asserting that Plaintiff's statements, in general, are inconsistent with objective medical findings is not a legally sufficient reason for rejecting Plaintiff's testimony, and it does not ensure this reviewing court that Plaintiff's subjective symptom testimony was properly considered.   *Brown-Hunter*, 806 F.3d at 493 (stating that general findings are insufficient to discredit claimant symptom testimony) (citation and quotations omitted).

Even if this court could infer inconsistencies between Plaintiff's statements and the diagnostic testing indicating only mild degenerative changes in the spine and mild COPD, the court is constrained to review the rationales expressed by the ALJ.   *Id.* at 495 (stating the reviewing court "cannot substitute [its] conclusion for the ALJ's or speculate as to the ground for the ALJ's conclusions").   Similarly, where the ALJ's decision allows for the inference that the ALJ connected Plaintiff's general statements of "allegedly incapacitating physical symptoms" to the fact that Plaintiff had not received physical therapy because she declined self-pay options, this rationale is not legally sufficient.   *See Orn*, 495 F.3d at 638 (stating that the inability to pay can serve as a sufficient reason where a claimant asserts an inability to pay, yet continues to receive other medical treatment and fails to mention the complaints for which claimant could not afford treatment) (citing *Flaten v. Sec'y of Health & Hum. Services*, 44 F.3d 1453, 1464 (9th Cir. 1995)).

Page 12 – OPINION AND ORDER

Indeed, even if the ALJ made this observation in an effort to link her "allegedly incapacitating symptoms" to a lack of treatment, the medical record shows Plaintiff sought other medical treatment and discussed her back pain, her improvement from physical therapy, her inability to pay for sessions, and her request for alternative approaches. Tr. 522, 537.[4]

Though observing that Plaintiff refused treatment in light of incapacitating symptoms suggests the ALJ found this to undermine Plaintiff's testimony, it is not the same as expressly stating that Plaintiff's refusal of treatment is the grounds for rejecting her subjective symptom testimony regarding her back pain, notwithstanding her refusal was due to inability to pay. Tr. 537. Conversely, the ALJ cites a report that indicates Plaintiff has difficulties with yard work, which is consistent with her testimony. Tr. 22, 68-72. Moreover, this court cannot cure the ALJ's error by linking statements by the claimant to certain medical evidence; that is squarely the duty of the ALJ. *Brown-Hunter*, 806 F.3d at 494 (stating "the error could not be corrected by the district court's statement of links between claimant testimony and certain medical evidence").

> ii.    *The ALJ failed to explain how Plaintiff's ADLs are inconsistent with her symptom testimony*

Additionally, the ALJ erred by improperly analyzing Plaintiff's ADLs and they undermined Plaintiff's subjective symptom testimony. To reject a claimant's subjective symptom testimony based on ADLs, the ALJ must make specific findings that a "claimant is able to spend a substantial part of his [or her] day engaged in pursuits involving the performance of physical

---

[4] Although notations of Plaintiff mentioning her back pain does not appear in each and every report between 2014 to 2018, she would periodically refer to back pain, express the efficacy of physical therapy, and request alternative treatment. Tr. 536-37, 505-668. The court may not infer, however, that this inconsistency is what the ALJ meant to reference in observing Plaintiff's refusal of treatment, especially considering the ALJ cited only two pages in the medical record. Tr. 24, 446-47.

functions that are transferable to a work setting." *Orn*, 495 F.3d at 639.   Though ADLs such as fixing meals, doing laundry, and working in the yard can support an adverse credibility finding, more is required than a mere recitation of the ADLs and cursory conclusion that such ADLs support an adverse credibility determination.   *Compare Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 599-600 (9th Cir. 1999) (noting household chore ADLs but additionally identifying ALJ's analysis of competing reports of activity and limitations in the medical record); *with Orn,* 495 F.3d at 639 (agreeing with claimant that "reading, watching television, and coloring books are activities so undemanding that they cannot bear a "*meaningful relationship* to the activities in the work place") (emphasis added).

Here, the ALJ made no specific findings whether the ADLs were inconsistent with the limitations alleged or whether the ADLs were transferable to the workplace.   The ALJ simply recited Plaintiff's ADLs and concluded, without explanation, that the ADLs indicate she "retains greater functioning than described."   Tr. 24.   This reasoning is well below the level of specificity required for a reviewing court to determine that the ALJ properly rejected a claimant's subjective symptom testimony.   The ALJ did not engage in any discussion regarding any purported inconsistencies between her ADLs and her testimony.   Nor did the ALJ evaluate whether the cited ADLs were performed for a substantial part of Plaintiff's day and were transferable to a work setting.   Indeed, Plaintiff's testimony indicated that although she engaged in daily chore-type ADLs such as gardening, she was limited to fifteen-minute increments with thirty-minute breaks for a total activity time of three hours, which stands in stark contrast to the ALJ's determination that she had could sit or stand for six hours in an eight-hour workday with normal breaks.   Thus, the ALJ did not properly reject Plaintiff's subjective symptom testimony based on Plaintiff's ADLs.

Page 14 – OPINION AND ORDER

>    iii.    *The ALJ erroneously rejected Plaintiff's symptom testimony by relying on*
>    *a lack of objective medical evidence.*

An ALJ "may not reject a claimant's subjective complaints based solely on a lack of

medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d

676, 680 (9th Cir. 2005) (citation omitted).    Moreover, an ALJ may not "solely rely on minimal

objective evidence" in rejecting symptom testimony, without providing "additional specific

findings to support" an adverse credibility determination.    *Id.*    However, an ALJ may permissibly

reject symptom testimony by relying on a claimant reporting debilitating symptoms, yet not

seeking "an aggressive treatment program and [] not seek[ing] an alternative or more-tailored

treatment program" after ceasing a medication routine due to side effects.    *Tommasetti v. Astrue*,

533 F.3d 1035, 1039 (9th Cir. 2008) (citations omitted).

The ALJ discussed Plaintiff's reportedly incapacitating diffuse back pain and spasms

following a brief summary of diagnostic imaging.    Tr. 22.    Notably, the ALJ pointed to the non-

examining doctor's testimony that the muscle spasms were a symptom "not typically indicative of

a structural problem or durational functional limitations."    Tr. 22.    The ALJ then stated that

"[r]egardless of how many symptoms the claimant alleges, or how genuine her complaints may

appear to be, the existence of a medically determinable impairment cannot be established" without

objective medical evidence.    Tr. 22.    Regarding the headaches, the ALJ notes that Plaintiff

presents "no evidence of regular use of a preventative medication or regular treatment with a

neurologist."    Tr. 24.    The ALJ also noted that Plaintiff is not engaging in counseling and

declined medication in relation to her depression-related complaints.    Tr. 24.

Here, though the ALJ did note that Plaintiff did not seek additional or more aggressive

treatment related to her headaches and depression, this passing observation would be specific but

far below clear and convincing reasons to reject Plaintiff's symptom testimony.    Additionally,

where the ALJ does discuss Plaintiff's back spasm symptoms, the ALJ merely summarizes the

diagnostic testing, notes the non-examining doctor's opinion regarding a lack of functional

limitation due to the spasms,[5] and states, without further discussion, that the lack of objective

medical evidence would not account for Plaintiff's symptom testimony.

As discussed above, the court cannot draw inferences as to the ALJ's reasoning for

rejecting symptom testimony.    Even so, the only inference drawn from the ALJ's reasoning is that

the lack of objective medical evidence serves to undercut the severity of Plaintiff's subjective

symptom testimony and reported limitations.    This is not legally sufficient for an ALJ to discredit

a claimant's subjective symptom testimony without further explanation.    Though failure to seek

treatment can undermine a claimant's assertions of incapacitating pain, the ALJ must provide clear

and convincing reasons that lack of pursuing treatment serves to undermine her testimony,

especially in light of Plaintiff reporting that she would continue with physical therapy exercises at

home given the efficacy but could not afford further sessions.    The ALJ did not do so here.

For the reasons discussed above, the ALJ erred in rejecting Plaintiff's subjective symptom

testimony by not linking particular parts of Plaintiff's testimony to parts of the medical record that

purportedly undermine her testimony, by improperly rejecting Plaintiff's symptom testimony

---

[5] The ALJ's reasoning regarding Plaintiff's testimony suggests that the ALJ relied on the non-examining doctor's opinion that no medical evidence undermined Plaintiff's testimony, Plaintiff does not challenge the ALJ's weighing of that medical opinion.  Accordingly, to the extent that an ALJ may rely on the opinion of a non-examining doctor who has failed to review medical records that may have contained objective medical evidence of alleged conditions and symptom etiology, it is outside the scope of this opinion.  *Compare* Tr. 41 (non-examining doctor stating she does not have records prior to 2014 pertaining to fibromyalgia); *with* Tr. 835-43 (treating physician reports from 2011 to 2012 indicating positive diagnostic testing for fibromyalgia and related treatment for other possible conditions).

Page 16 – OPINION AND ORDER

based on Plaintiff's ADLs, and by improperly citing a lack of objective or minimal medical evidence. Additionally, the ALJ's error was not harmless because by improperly rejecting Plaintiff's symptom testimony, the ALJ failed to properly evaluate Plaintiff's RFC in light of her more limiting testimony. *Brown-Hunter*, 806 F.3d at 494 (stating the error of not linking specific testimony to particular parts of the record is not harmless error).

II.    Lay Witness Testimony

Plaintiff argues that the ALJ erred in discrediting April S.'s lay testimony because "if Plaintiff's lay witness's testimony were fully credited, a reasonable ALJ could reach a different disability conclusion." Pl. Br. at 33. Defendant contends that because the ALJ properly rejected Plaintiff's testimony, the ALJ's rejection of lay testimony is equally without error. Def. Br. at 18.

The ALJ gave "little weight to the third-party opinion statement of April S.'s, the claimant's daughter." Tr. 25. The ALJ stated two reasons for rejecting April S.'s testimony. *Id.* First, it was based upon casual observation, "rather than objective medical examination and testing." *Id.* Second, the ALJ found the allegations inconsistent with the record as a whole. *Id.*

For an ALJ to properly discredit the testimony of lay witnesses, the ALJ "must give reasons that are germane to each witness." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (citation omitted). Resting an adverse credibility determination on lack of support from the overall medical evidence is not a germane reason for rejecting a lay witness's testimony. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citing *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009)). Additionally, that lay witness testimony differs from medical records is not a germane reason to reject such testimony. *See Diedrich*, 874 F.3d at 640 (stating "[t]he fact that lay testimony . . . may offer a different perspective than medical records alone is precisely why such evidence is valuable at a hearing").

Here, the ALJ erred in rejecting April S.'s testimony, because stating that lay testimony does not comport with objective medical evidence is not a germane reason for rejecting such testimony.    Moreover, the ALJ also reasoned that April S.'s testimony largely mirrored Plaintiff's testimony and was inconsistent with the record as a whole.    As discussed above, the ALJ erred in rejecting Plaintiff's testimony for inconsistencies, in general, with the objective medical record. Accordingly, to reject lay testimony on the same cursory rationale is error even with the lower germane standard for lay testimony.[6]

III.    The ALJ erred in evaluating Plaintiff's RFC

Plaintiff argues that the ALJ erred by failing to assess whether Plaintiff is capable of working on a "regular and continuing basis."  Pl. Br. 34.[7]  Plaintiff further argues that the ALJ failed to account for Plaintiff's documented limitations in the RFC determination.  *Id.*  Defendant argues the ALJ properly accounted for Plaintiff's limitations based on what the ALJ found credible.

In formulating the RFC, the ALJ has a duty to resolve conflicting evidence regarding functional limitations.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004).    An ALJ need not consider testimony relating to functional limitations that the ALJ has properly rejected.  *See id.* at 1197 (stating that ALJ properly found claimant not credible and not

---

[6] That the ALJ did not properly assess both claimant and lay testimony is further underscored by the ALJ referring to Ms. S. by a different name altogether.  Tr. 25.

[7] Plaintiff's briefing asserts, albeit in a cursory statement, that the ALJ improperly discounted medical and vocational evidence in formulating the RFC.  Pl. Br. 34.  However, Plaintiff does not point to specific medical records that purportedly were improperly rejected.  Considering Plaintiff's lack of citation to specific medical reports in this argument, this court interprets Plaintiff's argument as asserting the ALJ did not account for Plaintiff's reported limitations in the RFC.  Plaintiff focuses on the RFC not accounting for Plaintiff's need for additional breaks, which is consistent with Plaintiff's testimony.  Accordingly, whether the ALJ properly rejected or evaluated medical opinions in determining the RFC is outside the scope of this opinion.

required to be factored into the RFC determination); *cf. Magallanes v. Bowen*, 881 F.3d 747, 751 (9th Cir. 1989) (noting that an ALJ need not consider medical opinion that is properly rejected).

Here, the ALJ, as discussed above, improperly rejected Plaintiff's testimony relating to functional limitations.   By not considering such limitations, the ALJ erred in formulating the RFC. Moreover, the ALJ's error was not harmless because Plaintiff's reported limitations suggest an RFC lower than what the ALJ determined.   *Laborin*, 867 F.3d at 1154-55 (stating that error is harmless if is "inconsequential to the ultimate nondisability determination").   That Plaintiff's testimony regarding pain and her functional limitations was not properly considered is not harmless as it could have materially altered the RFC determination, thereby affecting the step four analysis.   Accordingly, the ALJ erred in determining Plaintiff's RFC because the ALJ did not properly account for Plaintiff's symptom testimony regarding pain and functional limitations in the RFC.

IV.    The ALJ's error at step two was harmless

Plaintiff argues that the ALJ erred in step two by not finding Plaintiff's fibromyalgia and chronic headaches as severe impairments.   Pl. Br. at 22.   However, error at step two is rendered harmless where the ALJ continues on in the sequential analysis and considers the symptoms in determining the RFC.   *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding the ALJ did not err at step two where the ALJ considered the limitations posed by the conditions not listed at step two); *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (discussing an error at step two is harmless when an ALJ factors in the limitations due to all impairments in determining the RFC).

Here, although the ALJ found that fibromyalgia was not a medically determinable impairment and that the chronic headaches were not severe, the ALJ discussed both the chronic

Page 19 – OPINION AND ORDER

headaches and back spasms, which Plaintiff asserts is related to fibromyalgia, during the RFC determination.    Accordingly, that the ALJ considered the symptoms and limitations in determining the RFC renders any error at stage two harmless, notwithstanding the ALJ's harmful error of improperly rejecting Plaintiff's subjective symptom testimony.[8]

V.    Remedy

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court.    *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1101-02 (9th Cir. 2014).    A remand for award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability.    *Id.* at 1100-01 (internal quotation marks and citations omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).    The second and third prongs of the test often merge into a single question:    whether the ALJ would have to award benefits if the case were remanded for further proceedings.    *Harman v. Apfel*, 211 F.3d 1172, 1178 n.7 (9th Cir. 2000).

Plaintiff argues that an award for an immediate payment benefits is appropriate because

---

[8] Plaintiff's argument consistently refers to medical reports and opinions that Plaintiff argues the ALJ should have addressed in determining the impairment and severity of fibromyalgia and chronic headaches.    Pl. Br. at 22-28.    Though Plaintiff seems to make subsidiary arguments – such as the ALJ had a duty to develop the record with respect to fibromyalgia and the ALJ did not properly consider treating physicians' diagnosis of fibromyalgia – Plaintiff's core argument is that the ALJ erred at step two by not finding fibromyalgia and chronic headaches as severe impairments.    Pl. Br. 26.    Thus, the court addresses Plaintiff's challenged issue of error at step two rather than as an error in rejecting medical opinion or a failure to develop the record.

nothing would be gained by remanding for further proceedings.  Pl. Br. at 35.  Defendant contends that an award for immediate payment of benefits is inappropriate because the medical evidence and Plaintiff's lack of credibility regarding her subjective complaints cast doubt on Plaintiff's status as disabled.  Def. Br. at 20.

The court concludes that remand for further proceedings is the appropriate remedy.  The ALJ erred in considering Plaintiff's subjective symptom testimony and accordingly, did not account for Plaintiff's reported limitations in determining her RFC; thus, there are still outstanding issues that the ALJ must resolve.  On remand, the ALJ should examine Plaintiff's subjective symptom testimony and lay witness testimony, and incorporate such reported limitations into the RFC, unless the ALJ determines the Plaintiff's and the lay witnesses' testimony as not credible by identifying what aspects of Plaintiff's and lay witness testimony is not credible and what evidence supports or undermines such testimony.

*Conclusion*

Based on the foregoing, pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's final decision that Plaintiff was not disabled is REVERSED and REMANDED consistent with this Opinion.

IT IS SO ORDERED.

DATED this 20th day of August, 2021.

JOHN V. ACOSTA
United States Magistrate Judge

Page 21 – OPINION AND ORDER